BATHKE, Appellant, v. MYKLEBUST, et al, Respondents

(12 N. W.2d 550.)

(File No. 8558. Opinion filed December 28, 1943.)

Rehearing Denied February 23, 1944.

**Charles Lacey,** of Sioux Falls, for Appellant.

**Bailey, Voorhees, Woods & Bottum** and **T. M. Bailey,** all of Sioux Falls, for Respondent A. S. Myklebust.

**Roy D. Burns,** of Sioux Falls, for Respondents Maurice A. Nelson, M. W. Parsons, and Roy A. Moore.

WARREN, J. The plaintiff brought an action to recover damages for false imprisonment. It would appear

that this action was tried against the present defendants upon amended pleadings.

For a number of years, the plaintiff had been employed at the State School for the Deaf. In May, 1940, the defendant Superintendent Myklebust, informed the plaintiff that he was dismissed. Plaintiff was offered janitor work during the summer which he did not accept. Plaintiff insisted that the reason for the dismissal should be given in writing and that the somewhat detailed explanation given orally was not sufficient. On the same day Superintendent Myklebust wrote plaintiff a letter stating that his services would end June 15, 1940. The receipt of the letter is denied by the plaintiff. There is evidence indicating that the Board of Charities and Corrections had approved the action of dismissal, and that a copy of the resolution had been handed to the plaintiff. There is evidence to the effect that the superintendent had been instructed by the board to run the institution, and could hire and fire as he saw fit. There is also evidence that upon a number of occasions, commencing May 30, 1940, the superintendent had requested the plaintiff to leave, and that he resisted and contended that the authorities could not make him leave. He continued to eat his meals and keep possession of living quarters at the school. He took a blanket from the school and used it in his personal automobile. He took tools belonging to the school and locked them up in a room preventing other employees from using them. Upon one occasion, he took a lawn mower away from an employee who had been instructed to mow the lawn. He insisted on keeping keys which belonged to the institution.

On July 25, 1940, the superintendent again demanded the keys and the plaintiff refused to give them up. The superintendent called the police, and when they arrived, he explained to them that plaintiff had been discharged but had refused to leave and that he was retaining the keys to state property and was bothering the employees. When the police arrived they demanded the surrender of the keys and other state property. The plaintiff demanded a court order

for his removal and insisted that he be taken to his attorney, Mr. Lacey.

At the police station, the plaintiff surrendered part of the keys. It would also appear that he had surrendered a part of the keys to the police on the premises. A great deal of conversation took place at the jailer's office and it would seem that plaintiff was incarcerated in a jail cell for some three to four hours. While at the police station, he surrendered all of the keys, the blanket was turned over to the institution, and he received his belongings contained in the room that he had occupied.

The issues of fact were resolved in defendants' favor by the jury's verdict. Plaintiff's appeal involves errors in instructions and rulings upon evidence.

For the reasons hereinafter given we are convinced that the record discloses the commission of a misdemeanor by the appellant in the presence of the respondent Myklebust, and the police officers, which in our opinion, makes unnecessary any discussion regarding the alleged error in the giving of instructions 4 and 7. In any event, the instructions were not prejudicial to appellant.

■ The evidence shows that the appellant continued to stay on the premises after he had been notified of the termination of his employment and that the superintendent had demanded the keys to the school property and that the plaintiff had refused to surrender them. The fact that he carried the keys and refused to surrender them; and, then, only surrendered a part of the keys while the policemen were at the school and did not give the possession of all of them until later at the police station, can have no other interpretation or legal effect than to show that while he retained the keys, he was violating the law and obstructing a public officer.

SDC 13.1302 "Every person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office is guilty of a misdemeanor."

Appellant's refusal, in the presence of all the defendants, was an obstruction of the defendant superintendent

in his attempt to discharge the duties of his office, as such, in arranging for the proper care and custody of the school property with the management of which he was charged. Although his refusal to turn over the keys is not what is known as resistance by force; yet, appellant's conduct was considerable more than mere remonstrance. He refused to surrender the keys. By so doing, he accomplished his purpose to keep the keys and to prevent the superintendent, who was entitled to their custody, from obtaining them and conducting the duties of his office.

That the appellant's conduct clearly comes within the terms of our statute, SDC 13.1302, there can be no doubt.

In casting about for a court definition of the word "obstruct," we find that in Conley v. United States, 8 Cir., 59 F.2d 929, 936, the court used the following language and we quote: "There should be no uncertainty with respect to the meaning of the word 'obstruct,' as employed in this contempt statute. In the dictionary it is defined: 'To hinder or prevent from progress; check; stop; also to retard the progress of; make the accomplishment of difficult and slow.' It has many synonyms of like import."

There can be no doubt that the appellant was delaying and obstructing the office of Superintendent Myklebust in the discharge of his duties by having in his possession the keys to rooms that contained the convenient and usable equipment of the institution and refusing to turn them over to the officers, made it impossible, no matter in what degree, for the superintendent to discharge or attempt to discharge the full duties of his office.

The facts in this case are not at all similar to the facts in State v. Knudson, 27 S. D. 400, 131 N. W. 400, cited by appellant, and need no comment as the distinction is obvious.

From the facts in the record, it clearly appears that the appellant intended to retain the keys and stay on the premises and that his conduct amounted to wilful acts of obstruction or opposition. Even though he went peaceably with the officers; yet, at all of the times he continued to

keep in his possession some keys and a blanket belonging to the institution. His conduct amounted to an act of wilful obstruction in that it kept the superintendent from the performance of his duties at the institution and made the appellant subject to arrest by the officers in whose presence he was committing a misdemeanor. SDC 13.1302 and SDC 34.1609(1). State v. Merrell, 52 S. D. 129, 216 N. W. 874; Richardson v. Dybedahl et al., 17 S. D. 629, 98 N. W. 164; Appling v. State, 95 Ark. 185, 128 S. W. 866, 28 L. R. A., N. S., 548.

 Appellant's assignments 4 to 8, both inclusive, deal with requested instructions Nos. 1, 2, 3, 4-b, and 6. These requested instructions were substantially covered and given by the trial court on his own motion. This court in the case of Smith & Co. v. Kimble et al., 38 S. D. 511, 514, 162 N. W. 162, 163, in dealing with requested instructions, used certain language which peculiarly fits into the issues presented by appellant, and we quote: "*. * * the instructions as given will be found to have substantially and correctly embraced every material proposition fairly covered by the issues and theories of the respective parties as presented by the evidence. The rules are well settled that instructions must be based on the evidence, and should present to the jury, in hypothetical form, the various conflicting theories of the respective parties, and should be construed as a whole and not in fragmentary parts; and where the instructions, as given, fairly and substantially cover the propositions presented by requested instructions, and cover the theories presented by the respective parties by the evidence, error cannot be predicated upon the refusal of the court to give such requested instructions."

 This court is committed to the rule that to entitle a party to a particular instruction, it must not only correctly state the law, but it must be responsive to the issues in the case. Aaker v. Quissell et al., 60 S. D. 513, 244 N. W. 889 and Knutsen v. Dilger, 62 S. D. 474, 253 N. W. 459; 120 A. L. R. Note 1513 and 1515. We do not believe that the court erred in failing to give the requested instructions.

From an examination of Cullen v. Dickinson, 33 S. D. 27, 144 N. W. 656, 50 L. R. A., N. S., 987, Ann. Cas. 1916B, 115, and Mannaugh v. J. C. Penney Co., 61 S. D. 550, 250 N. W. 38, relied upon by the appellant, it would seem that the court quite substantially covered the views expressed in both of said decisions.

We have carefully examined the other contentions of the appellant as to the admission of certain testimony and find that the court did not err in its rulings in reference thereto. The record has been examined as to other errors complained of; and, upon consideration, we conclude that the record does not contain harmful or prejudicial errors warranting a reversal.

The judgment appealed from is affirmed.

POLLEY, RUDOLPH, and SMITH, JJ., concur.

ROBERTS, P.J., absent and not sitting.